The court will turn to the second case, Vanzant v. Hill's Pet. Ms. Carey. May it please the court. My name is Ellen Carey and I will be presenting the argument for the appellants. The plaintiff's first amended complaint in this case alleged class action claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and unjust enrichment claims against defendants Hill's and PetSmart. This case is about the defendants unfair and deceptive practices. Defendants manufacture, label, and market prescription diet branded pet food to mitigate, treat, or prevent diseases and they sell these products to consumers pursuant to a self-imposed prescription requirement. In marketing, labeling, and selling prescription diet pet food, defendants use terms and symbols such as prescription and Rx in conjunction with the prescription requirement and they omit material facts. Namely, that the prescription pet food does not contain any drug or medicine and that it has not been evaluated or approved by the FDA. They do this in order to create the false impression in the minds of consumers that prescription pet food contains a drug or medicine. This allows the defendants to sell prescription pet food at above market prices in comparison to that provides medicinal relief that is not available over the counter. The FDA treats this as a drug even though it doesn't contain any drugs. Yes, when a marketer or manufacturer of a product labels their product as intended for use to treat or prevent disease or mitigate or cure disease, the FDA treats it as a drug even though there is no drug or medicine in this particular product. Right, if that's what the law requires, how can it be deceptive or unfair to market it as such? Well, the law requires that if the FDA treats it as a drug, that they get FDA approval as a new animal drug. Right, but this is not a regulatory claim. This is a claim for deceptive advertising. Right, and it's deceptive because what the FDA has done is they've issued a policy guide that says that recognizes that what these manufacturers and marketers are doing is they're selling products in violation of the Food, Drug, and Cosmetic Act. And they say, the FDA says, we recognize that you're doing this and we're going to allocate our enforcement resources and we're going to tell you if you comply with all 11 factors in our FDA compliance policy guide, which is attached to our complaint, then we will be less likely to initiate enforcement action. And the first factor, which is what defendants rely on, does is it permits them to sell... My question really was antecedent to that. You're not making a federal claim here that there's a violation of federal law. You're making a claim under the Illinois Consumer Act. And you have to show, or at least plead plausibly, that marketing this therapeutic pet food through veterinarians and requiring a prescription for that is deceptive or unfair. And I don't know that the claim is plausibly pleaded in the first instance, before we even get to this safe harbor defense that's being offered here, because the FDA treats this as something that does have to be marketed pursuant to, or through a veterinarian, that it can't be sold over the counter, if that's a term in the veterinary world, I don't know, or in the pet food world. There are non-prescription pet foods that claim to treat similar conditions that are not sold pursuant to prescription. And what we're alleging here is that what the defendants did was, we don't take issue with just the veterinary authorization requirement. We take issue and have pled that the defendants use the prescription requirement that they have imposed in conjunction with terms such as prescription diet, Rx required, Rx food or medicine, and PetSmart's requirement that the plaintiffs and consumers obtain a prescription card with an Rx number on there, that they do all that in conjunction with the prescription requirement and their omissions of material fact. And that is what is deceptive to consumers, because it leads consumers to believe that they're paying more for a product that contains a drug or medicine when there is no drug or medicine in this product, and when it has not been evaluated. But the FDA treats it as a drug. The FDA treats it as a drug if you claim, if the manufacturers claim that the product treats or prevents disease. And because of that, they're supposed to get it approved by the FDA as a new animal drug. And what the FDA does in the compliance policy guide is they say, these manufacturers and marketers are not getting this drug what we considered a drug because it is claimed to treat or prevent disease. You're not getting that approved, so the FDA has not evaluated the safety or efficacy of this. As I understand your claim, you're not targeting the failure to get FDA approval? Well, part of our unfair practices is alleging that the claim is against public policy because they failed to comply with the existing statute, which is the Food, Drug, and Cosmetic Act. So part of the unfair practices claim, yes, does rely on their failure to get FDA approval. To the extent that the claim is based on that, then you have a problem with the safe harbor because the FDA has promulgated this guidance saying, we're not going to prosecute you if you're marketing this through a veterinarian. We're less likely to initiate an enforcement action if you do all 11 things in the FDA compliance policy guide. And we allege that they did not do all 11 things in the compliance policy guide. So the safe harbor exemption does not apply here because we have alleged that conduct beyond what is permitted by the FDA compliance policy guide is what our complaint is based on. So we're not basing it solely on the sale or the restriction of the product to a veterinarian or those who are purchasing under the direction of a veterinarian. In the deceptive practices claim, it's more than just that conduct. It's that conduct in conjunction with the fact that they're marketing this as prescription diet, Rx required, Rx food or medicine. And the FDA never said you can use in that compliance policy guide that those terms, Rx medicine or prescription, are allowed. If the FDA knew that veterinarians were using those terms, they could have told marketers and manufacturers of those products in the compliance policy guide that they were permitted to use those terms. But they didn't do that. So this case is unlike the Price case, Price versus Philip Morris, where in that case the court said this is about the sale of a consumer product. And the consent decrees in that case had specifically authorized the use of the terms low-tar and nicotine in addition to like qualifying terms. But what we have here is the FDA saying nothing about what terms the manufacturers and marketers of these products are allowed to use when they're marketing the prescription pet food to consumers. So our position is that the safe harbor exemption does not apply to the deceptive practices act claims because it is the prescription requirement in conjunction with the use of terms and symbols and the omissions of material facts that is misleading to the consumers. That's what the complaint is based on for the deceptive practices act, and that is not permitted by the FDA's compliance policy guide. Does the FDA, is it what you're focusing on, I think we all see advertisements for pet food and that makes the dog healthier and this and that and the other thing, whatever it is. But it's like any person that's a diet expert, I'll call it, says that just by eating healthy food, it doesn't have to have chemical additives that you can be healthier. And I'm wondering if people, dog food, cat food manufacturers make that case that this is made of ingredients that is healthy and not, but doesn't have what I would assume a veterinary's required prescription, I guess, that has some kind of a chemical additive that is restricted and has to be done with prescription. I'm trying to make a distinction here. Right, so the defendants sell and market both prescription diet-branded pet foods and other pet foods that are not prescription diet-branded and do not require a prescription. The prescription diet-branded pet foods are substantially more expensive than the science diet-branded pet foods. The prescription diet pet foods are marketed to treat some of the same or similar conditions as the non-prescription pet food products, and what our complaint is about is that even though these prescription products do not contain any drug or medicine, the defendants are charging substantially higher prices for them and requiring a prescription and using all of these terms and symbols, which leads the consumer to believe that these products contain a drug or medicine and have been evaluated by the FDA for safety and efficacy when they have not been. Did that answer your question? Well, I don't see what the other side claims about what they do and don't use, but what do you call the symbol? The Rx required or prescription diet? The Rx required. That implies that it was prescribed by a vet. It implies that it requires a vet to prescribe it, and our allegations are it implies to the consumer that it contains a drug or medicine that has been approved by the FDA. So by putting that symbol on it, then you're saying it's a deceptive practice to attach that to their product when there isn't any vet requirement. I think it's a deceptive practice to attach it to the product and require consumers to pay higher prices for it, which leads consumers to believe that it contains a drug or medicine that has been approved or evaluated by the FDA when it does not. So it's all of these things in conjunction. It's the prescription requirement, the use of the terms and symbols, and the higher prices, which lead consumers to believe, along with the omissions of material fact, and those omissions of material fact are that it doesn't contain a drug or medicine, it hasn't been approved by the FDA, and the claims that Hills makes, the representations about the intended uses and effects of the products, have also not been evaluated by the FDA. Those are the omissions of material fact that we have alleged constitute deception and cause the reasonable consumer, including the plaintiffs, to believe that they're paying more for a product that contains a drug or medicine and has been approved and evaluated by the FDA. And the causal harm is what? The causal harm is that these plaintiffs saw these representations on the bag of pet food before they purchased them, and they say that they would, we have alleged, that they would not have bought these products had they known, and they would not have paid more for them, had they known they were not subject to FDA approval and did not contain a drug or medicine, and they bought these products for a number of years based on those representations and omissions of material fact, paid a higher price for them over a number of years, and that's the causal harm as a result of the omissions of material fact and the representations, including the labels on the bag and PetSmart's requirement that you get a prescription card and their designation of a separate section of their store. Does the statute have a reliance requirement? The Consumer Fraud Act does not have a reliance requirement. It sounds like you're pleading to a reliance requirement. Maybe you didn't need all of that, but... Right, but, correct. So the causal harm is they paid this inflated price. Yes. They got less than what they thought they were paying for. Right, they didn't get what they thought they were paying for, correct. Well, some dogs, an animal, I don't remember the name of the disease, but an animal might be diagnosed with something that we're all familiar with. I don't know what, kidney problems or lung problems or something that humans have. But anyway, that would require the medication and the vet and, I guess, what they put in food. Generally, with a pet, you've got to put it in a food form to eat it, so I guess that makes sense. But I guess I'm back to the point where you see advertisements. I don't have any pets. I was raised with them every time you can think of, but not since I've been married. But, and I'm curious, because when you have a pet and a lot of people are very devoted to them and want to have the best and cure, etc., you're saying this cuts into people that are looking out for the best interest of their pet and they buy something that's not as good as, I guess, it would imply if a vet said it's okay. Right, so they're buying something that they think is a drug or medicine and they're paying more for that. And we allege that had they known that these pet foods did not contain a drug or medicine and were not FDA approved, they would not have purchased these pet foods. They would have worked. That doesn't mean they would forego treatment for their sick cats. It's not as if they would take their vet's recommendation, ignore it, and just feed their dogs or cats, whatever. What they would have done is they, our allegations say they wouldn't have bought this food had they known what they now know. And that plausible inference from that fact is not what the district court found, which is they could have just foregone treatment for their very ill cats. What they would have done, and I think what is plausibly inferred from those allegations, is they would have worked with their vets to find another solution, to find another drug or combination of an actual drug that you feed a cat in a little piece of cheese or something. And that's eventually what these plaintiffs did. Eventually they found out that these cat foods did not contain a drug or medicine, and they worked with their vets to come up with another solution for their cat's illnesses. So the proximate cause allegations, the district court had found that, in our favor on that count actually, and the defendants have raised that issue on appeal that the proximate cause was not properly fled because our allegations suggest that they would have foregone treatment for their pets. But I think a plausible inference from our allegations is that if they had known what they now know about these cat foods, they would have talked to their vets about another solution. Well, that was the point of my question about reliance. The statute doesn't require reliance, so the plaintiff doesn't have to plead and prove that but for these misrepresentations she would not have purchased this product. All that needs to be pleaded and proved is that there were the misrepresentations, they were capable of deceiving, and that the plaintiff got less than what was represented. Right, and I think we have pled that in pleading that we didn't get what we thought we were getting and we paid more for it during that two to three year period of time for each of the plaintiffs. I see that I'm running low on time. I'd like to reserve the rest for rebuttal. Surely. Thank you, Ms. Garrett. Mr. Hacker? Good morning, Your Honors. May it please the Court. I'll start where Judge Sykes started and I think ended with the threshold problem of a lack of specificity in the pleading of the fraud allegations as required by Rule 9b. The real problem here, I think, there are a number of problems with the lack of specificity. What I'll talk about this morning is the failure to plead with specificity, the how. Rule 9b requires, of course, that you plead and allege with specificity the where, when, what, who, and how. And what's missing is the how, and particularly the how of how the plaintiffs were deceived and how the alleged deception caused them actual damage. Judge Sykes, I don't think the statute says explicitly reliance, but case after case, including DeBoos and Olivera and others, have said when a private plaintiff is seeking actual damages, the plaintiff has to allege that he or she was caused actual damage by the misrepresentation and that the damage resulted from the misrepresentation. But, right, it's not a civil fraud claim. So there is no reliance requirement. That's what distinguishes the statutory claim from a civil fraud claim. The plaintiff doesn't have to plead and prove that but for the misrepresentations I would not have engaged in this transaction. All that the plaintiff needs to plead and prove is that there were deceptive statements made, they had the capacity to deceive, and that they were made with intent that the plaintiff rely, so that's the misrepresenter's intent, and that the plaintiff suffered a causal loss. It's just a causal loss requirement. That's all it is. Right, and plaintiffs here are trying to say, they're trying to allege that there was a causal connection, that they saw the label and purchased it because it was their own claim. Right, that's clear. The problem is they don't plead any of that with the specificity required, particularly because of the nature of the claim. As Judge Flom's opinion in Pirelli emphasized, it's been picked up time and time again, Rule 9b, the specificity required, depends on the facts of the case. What is this case fundamentally about? It's fundamentally about the fact that a veterinary authorization is required, Judge Magnud, is required here. It's not that there's an Rx and vet authorization isn't required. That's the whole point. Veterinary authorization is required. That's what they're complaining about, and given that they themselves plead, in paragraphs 62 and 67 of their own complaint, that they bought this product because a veterinarian recommended the product, that's their complaint. It's incumbent on them then to plead facts that, applying common sense, again, as Pirelli says, would plausibly permit an inference that it was not the veterinary recommendation, go get this product, but it was said on the label. To do that, they need to tell a much more detailed story than the complaint does. They need to have specific facts alleging, for example, did the veterinarian explain to them what the product was? Did the veterinarian tell them, there's no medicine in the product, but I'm prescribing it because your dog needs this particular formula of food in order to deal with the very sick illness problems that the cats, rather, that the pets had. Doctors prescribe things all the time that don't involve medicine. They prescribe bed rest. They prescribe exercise. They prescribe diets. This is a prescription that the manufacturers require because of the specialized nature of the foods and because they can be misused by a consumer who sees it on the shelf, if the consumer were to see it on the shelf, and see that it's for urinary care. They may misunderstand it. So the manufacturers and the FDA say that it must be prescribed by a veterinarian. And so they need to explain much more about that communication. I don't think there's any question if it's prescribed by a veterinarian and the consumer knows that. That's not the issue here, is it? I think it's exactly the issue with respect to... Well, the way I understand it, at least, that they put these symbols up, like it implies without having gotten whatever the prescription is or whatever, even a card that you get, something that you go in, and I show PetSmart that this is a vet that has approved this. But the thing that I'm not quite sure of this, I guess, is compliance policy guide, CPG. Can a person, other than just a consumer, have access to that and then rely on it? No. The point, and I, with respect, disagree with your characterization of their claim. Their claim is the whole problem they have is that the manufacturer will not allow a consumer to purchase this product unless a veterinarian authorizes the purchase in advance. That's the complaint. That's the problem here, according to them. So the RX symbol, the prescription symbol, accurately, I think Judge Sykes accurately says that you have to have a veterinarian authorize this. Their complaint is the FDA doesn't require it. The law doesn't mandate it. The manufacturer does. They're wrong about that in the sense that the FDA affirmatively encourages, but it's certainly true that when it says RX prescription, that's absolutely accurate. You have to have veterinary approval in order to purchase the product. Nobody disputes that. They would agree with that. Their complaint is that by requiring veterinary authorization, you're conveying something that isn't true. You're conveying the existence of medicine in the product, but veterinary authorization doesn't convey medicine. Veterinary authorization conveys veterinary authorization for good and sufficient reasons. Mr. Hacker, what does prescription carry with it as a meaning? Prescription, it means, if you look it up, you can just look up the definition. It means doctor authorization for treatment. That's what it is. Doctors prescribe bed rest. They prescribe exercise. They prescribe low-sodium diets. That doesn't mean medicine. The fact here, FDA recognized in the very first sentence of the substantive part of the CPG, that there was 50 years of industry practice of selling prescription diets, of selling pet food with required veterinary authorization, of selling pet food that was intended to treat diseases, and the FDA recognized that historically that had been done exclusively to and through veterinarians. The problem the CPG was addressing was a more recent phenomenon of direct-to-consumer sales, and that's what the FDA was concerned with because consumers don't necessarily understand what it means for urinary care, how to use that product. And so the FDA was trying to endorse 50 years of practice to say that if you sell through a veterinarian and satisfy other requirements that are really just restatements of other principles, you can't also lie, that kind of thing. If you sell it through a veterinarian, you will be entitled to regulatory forbearance, and we will not go after you or prosecute you for a false and misleading label. That's the whole point of the CPG. It's a level one guidance that binds employees. They have to follow it unless they have some really good reason not to. But more importantly, it was promulgated after notice and comment, and was designed explicitly to provide guidance to the industry so the industry would understand that this longstanding practice remained permissible in the view of the FDA so long as you sold the product through veterinarians and required veterinary approval, which is exactly what these products do. There are other problems with respect to specificity, but I can return to the Rule 9b problem. Other things they don't say and would need to say, in addition to telling what the veterinarian said to them about the product, they would need to explain what did the veterinarian say about the importance of this particular therapy, of these particular products. Did the veterinarian identify other alternatives? Was there anything said in that process in order to establish a plausible inference that they didn't look to other alternatives or wouldn't have looked to other alternatives? And critically, I think, because this court has emphasized it again in Pirelli, again in Camasta, again in the Presser case, Judge Flomby were on that panel. In those cases, this court has said to sufficiently plead under Rule 9b, allegations of fraud, deception, and causation, you have to plead the context. What were the other options available? Here the plaintiffs don't say a word about what other diet products were available, what other combination of exercise, diet, and actual medicine might have been available. No discussion of alternatives that might have been available to them instead of these products to permit an inference that there was something out there that they could have purchased as an alternative to take care of their very sick pets. And let's be very clear about one thing. They don't allege anywhere that these products didn't work, that these products didn't help solve or ameliorate the medical conditions that their cats were suffering from. The claim is that they overpaid. The claim is solely that they overpaid, which goes to the point that their claim is about deception, not, as counsel suggested today, the mere fact of selling something that hadn't been formally approved by the FDA. They don't allege that the products were unsafe and that their pets suffered from some problem because these products were on the market. To the exact contrary, they kept purchasing them. The only inference from that is that they were working, pursuant to their veterinarian recommendation. So they don't plead, as required under Rule 9b, the specifics of how it was that the label deceived them when they themselves plead that the veterinarian recommended these products. They don't plead what the veterinarians say. They don't plead the existence of other products that they could have turned to to avoid overpaying, Your Honor. None of that is in the complaint, and that's exactly what Rule 9b requires. It's exactly what this Court's cases have to be required. The point is not required under Illinois law. That's a reliance point. Well, I mean, Pirelli and Camasta and Presser were all ICFA cases saying that you have to plead the availability of other products. And those were all construing the consumer product. So I think that's maybe where there's a slight difference. Whether you call it reliance, those cases, and if you look at Oliveira, the whole square holding of that case, Oliveira, is that you have to show that you saw the misrepresentation, and that misrepresentation resulted in your damage. Yes, that's not a reliance requirement. I mean, again, whatever the label one puts on it, it's clear from, for example, Pirelli and Camasta, that you need to be alleging under 9b that you would have used something else but for this misrepresentation. Something was available, and that's what caused you to make the overpayment. Yeah, that but for requirement is a reliance requirement, and Illinois law does not require that. I understand that. Then I'll just refer to those cases, and I think those cases will show you the availability of other options is a required allegation to plead a fraud claim under 9b, whether it's ticked or not. And is that consistent with Illinois law? I think it is. Because of the requirement for action. Even if Illinois law does not have a reliance requirement? I don't want to concede it only because I think it may come to the same thing when the law is saying you have to, in an actual damage case, you have to show that your damages resulted from. I think the phrase that cases use is resulted from. Right, but you don't have to prove but for reliance, but for this misleading, this false representation, I would not have purchased this product. I mean, I can't concede it. We'll have to look at the cases. They are trying to plead that. I mean, they themselves are trying to plead that they saw this and this is why they did it. I understand. There's a lot of confusion. Fair enough. So let's straighten it out. What is the law? I'm sorry? So let's straighten out the confusion. What is the law? Is there a reliance requirement or not? I think there is, and that's what the courts are saying when they say that there has to be the damage resulting from. What has the Illinois Supreme Court said about a reliance requirement? I think that that's what Olivera is saying, that there's a reliance requirement. Because it's saying you can't have a market-based theory. You have to show your individual that you saw the misrepresentation of that and not something else is what caused your damages. I'm not sure how you get to an individual causation without reliance. But, again, I don't think this disagreement, and if Your Honor is right, and I'm happy to concede after reviewing the cases that Your Honor is right, because it doesn't matter here. They're trying to plead it, and what they don't plead for sure is that given the conversation, the recommendation of the veterinarian, that the label is what caused reliance or not. The label is what caused them to make this purchase rather than the veterinarian's recommendation. That's their own allegation. The veterinarian's recommendation is why they went and got the product. Are there some food, let's say cat food, I guess, that you cannot buy without a prescription? The products here at issue are products you cannot buy without a prescription. Cannot buy without that. By manufacturer requirement following the CPG. Because most of the time, people with animals, it's when the animal gets old, and they start having a lot of problems, just like people, and so you go to the vet. The word of mouth is that this works. It helps the pet. People don't care whether it's horses or whether it's cats. Some stuff, diet and exercise and all that stuff is important. I guess all I'm looking at in getting to this issue of reliance, when a product works, then other people want to get that too. But you can't get it without a prescription, I guess, the ones they're talking about. Yeah, that's what this is about. To be clear, their own allegations, again, individually are not that they heard about this product and said, I want this, and they saw a label, they saw an advertisement, and went to their veterinarian and asked for it. It's the exact opposite. Their pets were very sick. They went to the veterinarians, and they alleged, paragraph 62 and 67, their veterinarians prescribed, that was their veterinarian's word, prescribed this product. Well, they complained because it's got these little symbols on it that imply that it was prescribed and therefore good, but it wasn't. No, with respect, what they're complaining about is the fact that it's required to be prescribed. It says prescribed, it says Rx, and the law doesn't mandate a prescription. That's their complaint. And so, therefore, you're prohibited in Illinois from requiring veterinary authorization, or at least from calling it a prescription in Illinois. But that would be directly contrary to the CPG, the most essential factor of which is the veterinarian authorization. That's what they're trying to encourage. Their view would be if you try to get the regulatory benefit the FDA is trying to encourage to protect animals, you're violating Illinois law. You can't do the two at the same time. Thank you. Thank you, Mr. Hacker. Ms. Ridley. Good morning. My name is Eileen Ridley. I represent PetSmart. May it please the Court. I don't want to retread ground my colleague has already addressed. I want to focus in on PetSmart as the retailer. PetSmart is not the manufacturer. The manufacturer, as a result of the CPG, has a requirement that if this food is to be purchased, there must be veterinary involvement. PetSmart, therefore, is informing the public of that reality. That's why there's an Rx. That's why on the website it says, in conjunction with your veterinarian. We are merely conveying to the consuming public what the manufacturer is informing us regarding how someone could purchase their product. You're not responsible for the label. Not responsible for the label. You don't control the label. Do not control the label. You're not answerable to the FDA for the label. That's exactly right. Although the FDA and the CPG clearly understood that these products would be to the public, which is why it wanted to have veterinary involvement. And all PetSmart is saying to its consuming public, if you want these products, these are what's required according to the manufacturer. Right, so you're just here because you're in the chain of distribution. That's exactly right. Like a distributor of a product and a product's liability is in the case. That's exactly right. I think the only thing we haven't addressed is plaintiffs allege that because we have a section of the store that has these products, that somehow that's a representation. I would merely note that the rest of the store is available to the consumers as well. And that if they wanted to do a comparison shop, they could clearly do so. There's no indication, and in fact not in fact the case, that if you go in the section of the store where there's these products, that you somehow no longer can go to any other section of the store. In other words, I don't believe that the fact that there's a section of the store where these products exist for people to look at is tantamount to a deceptive practice. But the signage and so forth is pursuant to whatever the manufacturer gives you. I don't know that it would be that direct. It's merely a signage to say this is where the prescription food would be. In other words, I don't think that... We don't do the labeling on the product. And all that's being alleged is that there's a section of the store where product which requires veterinary involvement is located. And we merely... If somebody came in and said, you know, I'm looking for this type, we would merely direct them to that section of the store. What about the safe harbors? You direct them to the section of the store, but if they don't have a prescription, I don't know what you're... What are you doing? I mean, you're... No, all I'm saying is that there is a section of the store where this food is present. But you're right. If they don't have a prescription, if they don't have veterinary involvement, they will not be able to purchase the... Is there a different margin on the prescription drugs versus the over-the-counter drugs at PetSmart? Or maybe the record doesn't reflect that. The record doesn't reflect that. And candidly, I don't believe there's an over-the-counter drug equivalent, quite frankly, in my understanding of how the processes work. Well, the stuff that's prescription-required costs more, I guess. Yes. I think that the record does reflect that. I mean, they're saying they're paying more if they get that sort of thing. What about the safe harbor provision under the CPG? I'm not quite sure how that applies. I think with regard to the safe harbor provision, I think the point that's being made regarding it is that it should and does apply because the CPG is a clear Level 1 directive from the FDA, understanding that these products have been in the market for 50-plus years, that knowing these products are in the consuming world, that there has to be veterinary involvement. They therefore have this guidance that's a Level 1 guidance within the authority of the agency, which means complying with it by the manufacturer and then by the retailer should, in fact, be protected. In other words, the fact that we comply with what is being directed to us by the FDA cannot and should not subject us to civil liability. Just for purposes of evaluating what inferences are reasonable from this complaint, I don't have a pet, so I don't know, but how are prescriptions for actual medicines for pets filled? Again, prescriptions for actual medicines would include a script, a prescription from the vet specifying not only the medicine, but the appropriate dosage and how long that... But does your client, PetSmart, fill those? Do you have a little pharmacy section in your store? We do. You do? Oh, okay. We do. Okay. Thank you, Erin. Thank you, Ms. Ridley. Ms. Geary. I just want to touch on a few points. Mr. Hacker said that veterinary authorization doesn't convey medicine or a drug. Our position in what we've alleged is that the terms prescription and the terms Rx, used in conjunction with the prescription requirement on the label do deceive the consumer and they do convey that the medicine or a drug is in the food that they're calling prescription diet. Mr. Hacker also mentioned that we needed to plead context. What other options were available? And there was some discussion with you, Judge Sykes, about whether that reliance was required. We don't think it is, but in any event, we did plead in our complaint that the defendants sell non-prescription products that are marketed to treat or prevent similar or the same conditions at significantly lower prices. So I do think that we, and we pled, that we would not have bought these products had we known that they did not contain a food or medicine and they were not FDA approved. What is required is that your client saw the label. Right, and we pled that. We pled that they saw the label before they purchased the product. We pled that they saw the term prescription diet on the label. We pled that they were required by PetSmart to obtain a prescription card with an Rx number and an Rx date and that that suggested to them that what they were buying was similar to what you had mentioned before, an actual drug, just like if you were going to get a pill to feed your pet. Our clients thought when getting dog food or cat food, in this case, called prescription diet that said Rx required, Rx food or medicine, and it requires you to go to PetSmart and get a card, a laminated card that says Rx date and Rx number on there. That led them to believe, regardless of what that vet said, that led them to believe that this food contained a drug or medicine. Right, but is that reasonable given what I was just told about how actual medicines are marketed? I mean, this is over the counter. This pet food is over the counter. Except it's not over the counter. It's not kept behind the pharmacy counter. But if you go to PetSmart and you go to their section and you pulled it off the counter and you went up to the front and tried to buy it, you can't. Right, but you can pull it off the counter yourself. You don't have the veterinary pharmacist or whoever they have behind the counter at the pharmacy. But you are not, and we pled this, you are not allowed to purchase prescription pet food from PetSmart without a prescription or without their specific prescription card. So it's not over the counter. If you go into PetSmart, you can take the science diet right off the shelf, go up and check out. If you go to PetSmart and you go to the prescription food section and you take the prescription diet cat food, put it in your cart, bring it to the front, they don't let you buy it unless you have a prescription. And we pled that. We pled that each of these plaintiffs had to get a prescription card and had to show that card each time they bought it at PetSmart. I see that I'm running out of time here. The only other thing that I wanted to mention is that we allege with respect to PetSmart that they advance and adhere to the prescription requirement by requiring these plaintiffs to obtain a prescription card and we allege that they profit off these products by charging a higher price for them. Thank you. Thank you, Ms. Carey. Thank you, Mr. Hacker. Ms. Ridley, the case is taken under advisement.